1  Keith Beauchamp (012434)
   Scott M. Bennett (022350)
2  Coppersmith, Schermer & Brockelman PLC
   2800 North Central Avenue, Suite 1200
3  Phoenix, Arizona 85004
   Telephone: (602) 381-5490
4  Facsimile: (602) 772-3738
   kbeauchamp@csblaw.com
5  sbennett@csblaw.com

6  Jake M. Holdreith (*pro hac vice* application to be filed)
   Jamie R. Kurtz (*pro hac vice* application to be filed)
7  Robins, Kaplan, Miler & Ciresi L.L.P.
   800 LaSalle Plaza, Suite 2800
8  Minneapolis, MN 55402
   Telephone: (619) 349-0193
9  Facsimile: (619) 339-4181
   jmholdreith@rkmc.com
10 jrkurtzkurtz@rkmc.com

11 *Attorneys for Plaintiffs*

12

IN THE UNITED STATES DISTRICT COURT

13

FOR THE DISTRICT OF ARIZONA

14

| | |
|---|---|
| 15 Virtual Radiologic Corporation and NightHawk Radiology Services, LLC, | No. _____ |
| 16 | |
| 17 Plaintiffs, | **COMPLAINT FOR PATENT INFRINGEMENT, COPYRIGHT INFRINGEMENT, TRADE SECRET MISAPPROPRIATION, INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE AND BREACH OF CONTRACT** |
| 18 v. | |
| 19 Tandem Radiology, LLC; Imaging Advantage, LLC; Direct Radiology, LLC; Chris Huber; John Cardosa; Paul Cartee; Jordan Kojouharov and Kamil Rahme, | |
| 20 | |
| 21 | |
| 22 Defendants. | **JURY TRIAL DEMANDED** |

23

24          Plaintiffs Virtual Radiologic Corporation and NightHawk Radiology Services, LLC

25 (collectively, "Plaintiffs"), for their claims against Defendants Tandem Radiology, LLC,

26 Imaging Advantage, LLC, Direct Radiology LLC, Chris Huber, John Cardosa, Paul

27 Cartee, Jordan Kojouharov & Kamil Rahme (collectively, "Defendants"), allege as

28 follows:

1. Virtual Radiologic Corporation ("vRad") is a Delaware corporation, having a place of business at 11995 Singletree Ln., Eden Prairie, MN 55344.

2. NightHawk Radiology Services, LLC ("NightHawk") is an Idaho limited liability company, having a place of business at 11995 Singletree Ln., Eden Prairie, MN 55344.

3. On information and belief, Tandem Radiology, LLC ("Tandem") is an Arizona limited liability company, having a place of business at 6615 N. Scottsdale Rd. #200, Scottsdale, AZ 85250.

4. On information and belief, Imaging Advantage, LLC ("IA") is a Delaware limited liability company, having a place of business at 100 Wilshire Blvd., Suite 1845, Santa Monica, CA 90401.

5. On information and belief, Direct Radiology, LLC ("DR") is a Washington limited liability company, having a place of business at 16 Slater Street South, Kirkland, WA 98033.

6. On information and belief, Chris Huber is a California citizen who resides at 2649 Ocean St., Carlsbad, CA 92008.

7. On information and belief, John Cardosa is an Arizona citizen who resides at 4208 N. 38th St., Apt. 5, Phoenix, AZ 85018.

8. On information and belief, Paul Cartee is a Washington citizen who resides at 120 South Greenridge Dr., Liberty Lake, WA 99019.

9. On information and belief, Jordan Kojouharov is an Arizona citizen who resides at 9048 E. Altedena Ave., Scottsdale, AZ 85260.

10. On information and belief Kamil Rahme is an Arizona citizen who resides at 8394 E. Sutton Dr., Scottsdale, AZ 85260.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Plaintiffs' patent and

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

copyright claims under 28 U.S.C. § 1331 and 1338(a). Plaintiffs' patent claims arise under the Patent laws of the United Sates (35 U.S.C. § 1, *et seq*.). Plaintiffs' copyright claims arise under the United States Copyright Laws (17 U.S.C. § 101, *et seq*.).

12.     This Court further has subject matter over Plaintiffs' state and common law claims under 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over Tandem, an Arizona limited liability company.

14.     This Court has personal jurisdiction over IA. On information and belief, IA has ongoing and systematic contacts with the State of Arizona and this judicial district. IA is conducting business in Arizona and in this judicial district by, among other things, recruiting and retaining employees and maintaining one or more places of business in the Phoenix, Arizona metropolitan area, and purposefully offering teleradiology services to Arizona healthcare facilities using the technology that is accused of infringement in this action.

15.     This Court has personal jurisdiction over DR. On information and belief, DR has ongoing and systematic contacts with the State of Arizona and this judicial district. On information and belief, DR is conducting business in Arizona and in this judicial district by, among other things, contracting with IA and offering teleradiology services to Arizona healthcare facilities using the technology that is accused of infringement in this action.

16.     The Court has personal jurisdiction over Mr. Huber and Mr. Cartee. On information and belief, Mr. Huber and Mr. Cartee are two of the founders of Tandem, an Arizona limited liability company and have participated in breaches of contract, misappropriation of trade secrets, and interference with prospective business advantage, at least in part in Arizona.

17.     The Court has personal jurisdiction over Mr. Cardosa, Mr. Kojouharov and Mr. Rahme.  Mr. Cardosa, Mr. Kojouharov and Mr. Rahme all reside within the District of Arizona.

18.     Venue is proper in this district under 28 U.S.C. §§ 1391(c) and 1400 for the patent and copyright claims.  Accordingly, venue is necessarily proper over the state law claims that are appended to them under 28 U.S.C. § 1367.

## FACTS

### Teleradiology and vRad's Patents

19.     vRad is a leader in the field of teleradiology services.  Teleradiology is the transmission of radiological patient images, such as x-rays, CTs and MRIs, ("scans"), from one location, usually a hospital or imaging center, to another location for professional diagnostic reading and analysis by a radiologist.  These services allow radiologists to provide their services without having to be in the same location as where the image is taken, and to read images from a plurality of locations during a given working shift.  This allows healthcare facilities to improve radiology turnaround times and to have access to high-quality and sub-specialized radiologic services without having to incur the cost of having a full time staff of radiologists with different areas of expertise.

20.     vRad offers a proprietary teleradiology platform which includes a computer network and sophisticated software by which hospitals transmit requests for teleradiology services using vRad's software and hardware.  vRad's software and hardware then ascertains the type of scan and determines the best radiologists to read the scan, based on information such as state licensure, facility credentialing and privileging, scan type, area of subspecialization, and availability to read the study within desired timeframes.  Once a radiologist has read the scan, the radiologist's report is transmitted back to the originating hospital.

21.     vRad has expended many tens of millions of dollars developing its proprietary teleradiology platform over the course of more than a decade.  The United

States Patent and Trademark Office has recognized vRad's achievements by awarding numerous patents to vRad and its inventors for product and process innovations in the field of teleradiology.

22. On June 28, 2011, the United States Patent and Trademark office duly issued U.S. Patent No. 7,970,634 (the "'634 patent"), titled "Multiple resource planning system" to vRad. vRad owned the '634 patent throughout the period of the infringing acts described herein and still owns the '634 patent. vRad has all rights, titles, and interest in the patent, including the exclusive rights to bring suit with respect to any past, present, and future infringement thereof. A copy of the '634 patent is attached hereto as Exhibit A.

23. On January 3, 2012 the United States Patent and Trademark office duly issued U.S. Patent No. 8,090,593 (the "'593 patent"), titled "Multiple resource planning system" to vRad. vRad owned the '593 patent throughout the period of the infringing acts described herein and still owns the '593 patent. vRad has all rights, titles, and interest in the patent, including the exclusive rights to bring suit with respect to any past, present, and future infringement thereof. A copy of the '593 patent is attached hereto as Exhibit B.

24. On March 27, 2013 the United States Patent and Trademark office duly issued U.S. Patent No. 8,145,503 (the "'503 patent"), titled "Medical image metadata processing" to vRad. vRad owned the '503 patent throughout the period of the infringing acts described herein and still owns the '503 patent. vRad has all rights, titles, and interest in the patent, including the exclusive rights to bring suit with respect to any past, present, and future infringement thereof. A copy of the '503 patent is attached hereto as Exhibit C.

25. On June 5, 2012 the United States Patent and Trademark office duly issued U.S. Patent No. 8,195,481 (the "'481 patent"), titled "Teleradiology imaging processing system" to vRad. vRad owned the '481 patent throughout the period of the infringing acts described herein and still owns the '481 patent. vRad has all rights, titles, and interest in the patent, including the exclusive rights to bring suit with respect to any past, present,

{00101438.1 }

and future infringement thereof. A copy of the '481 patent is attached hereto as Exhibit D.

26. The inventions described and claimed in the '634, '593, '503, and '481 patents (the "patents-in-suit") cover a variety of novel systems and methods in the field of teleradiology technology. For example, the inventions in the patents-in-suit include the way in which teleradiology platforms automatically identify specific radiologists to read particular scans by taking into consideration various factors such as the type of pathology captured in the scan, the specific expertise of the radiologist, the availability of the radiologist, the state of licensure, etc. These innovations have greatly increased the accuracy and speed by which scans are assigned to a particular radiologist and a report is returned to the requesting hospital.

**NightHawk's Teleradiology Platform Copyright and Trade Secrets**

27. NightHawk was acquired by vRad in December 2010 and is now an indirect, wholly owned subsidiary of vRad. As a subsidiary of vRad, NightHawk continues to own all of its intellectual property, including its trade secrets, patents and copyrights.

28. NightHawk, like vRad, is an innovator in the field of teleradiology. Before NightHawk was acquired by vRad, NightHawk created its own teleradiology platform, which was called Auto Rad 2 ("AR2"). AR2 was the result of many years of software development, and is made up of over five million lines of source code. Although AR2 includes novel source code, it also implements inventions claimed in the patents-in-suit.

29. The AR2 source code is proprietary and confidential and is the subject of Copyright Registration No. TXu001860792. The TXu001860792 Registration is attached hereto as Exhibit E.

30. Further, the AR2 software also includes trade secrets and other confidential information belonging to NightHawk. The trade secrets and confidential information that

are specific to AR2 include, without limitation, the structure of the AR2 source code, and certain algorithms and routines in the source code ("the AR2 Trade Secrets").

31.     Additionally, the Defendants had access to other confidential information and trade secrets including, without limitation, business information, customer identities, business volumes, pricing, turn-around times, and relationships with particular radiologists ("the NightHawk Business Trade Secrets") (collectively, the AR2 Trade Secrets and the NightHawk Business Trade Secrets are "the NightHawk Trade Secrets").

32.     NightHawk developed the AR2 software with the assistance of several software developers. Two of the key AR2 software developers were Mr. Rahme and Mr. Kojouharov, both of whom were intimately involved in the design and development of AR2.

33.     Throughout the duration of their employment with NightHawk, both Mr. Rahme and Mr. Kojouharov had unfettered access to AR2 Trade Secrets, know-how and confidential information relating to the research, design and development of AR2 including all of the source code. Further, throughout the duration of their employment at NightHawk, Mr. Rahme and Mr. Kojouharov did in fact access and modify the AR2 source code as a normal and essential function of their roles at NightHawk.

34.     Similarly, throughout the duration of their employment with NightHawk, Mr. Huber, Mr. Cardosa and Mr. Cartee had unfettered access to the NightHawk Business Trade Secrets. Further, throughout the duration of their employment at NightHawk, Mr. Huber, Mr. Cardosa and Mr. Cartee developed and used the NightHawk Business Trade Secrets as a normal and essential function of their roles at NightHawk.

35.     Throughout all relevant times, Nighthawk took all reasonable and necessary precautions to guard the secrecy and safety of the NightHawk Trade Secrets.

36.     As a condition of their employment with NightHawk, both Mr. Rahme and Mr. Kojouharov assigned to NightHawk all intellectual property relating to their work at NightHawk, including all trade secrets.

37. Specifically, the NightHawk Confidentiality, Intellectual Property and Software Agreement signed by Mr. Kojouharov is attached hereto as Exhibit F. That agreement states:

> All intellectual property which includes software, systems, etc. created, made, or originated by Jordan Kojouharov or any other Nighthawk Radiology Services employee or contractor during the term of this contract shall be the sole and exclusive property of Nighthawk Radiology Services.

The agreement goes on to state:

> By virtue of your contract, you may become aware of information relating to the business of affairs of the Nighthawk or its Related Bodies Corporate, including, but not limited to its . . . trade secrets . . . ("Confidential Information"). The Confidential Information remains the sole property of Nighthawk or its Related Bodies Corporate. You shall not, either during (except in the proper course of your duties) or after the termination of your employment, without the prior written consent of Nighthawk, directly or indirectly, divulge, use or otherwise disclose to any person whatsoever, the Confidential Information, either for your own or another's benefit.

> You must immediately notify Nighthawk should you suspect misuse of the Confidential Information and assist Nighthawk in any proceedings taken by Nighthawk for alleged misuse of the Confidential Information.

38. Similarly, the Employment Agreement signed by Mr. Rahme is attached hereto as Exhibit G. That agreement states:

> All intellectual property which includes software, systems, etc. created, made, or originated by (employee) or any other Nighthawk Radiology Services employee or contractor during the term of this contract shall be the sole and exclusive property of Nighthawk Radiology Services.

The agreement goes on to state:

> By virtue of your employment, you may become aware of information relating to the business of affairs of the Nighthawk or its Related Bodies Corporate. This may include but is not limited to its intellectual property, information of a business or personally sensitive nature, client list, trade secrets, client details, teach methods, sales and marketing information, and financial information between the Company and/or its Related Bodies Corporate and/or its clients ("Confidential Information").

> . . .

> The Confidential information remains the sole property of Nighthawk or its Related Bodies Corporate. You shall not, either during (except in the proper course of your duties) or after the termination of your employment, without the prior written consent of Nighthawk, directly or indirectly, divulge, use, copy or reproduce, or remove from Nighthawk's premises or

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

otherwise disclose to any other person whatsoever, the Confidential Information, either for your own or for another's benefit.

You must immediately notify Nighthawk should you suspect misuse of the Confidential information and assist Nighthawk in any proceedings taken by Nighthawk for alleged misuse of the confidential information.

39.     Also as a condition of their employment with NightHawk, Mr. Huber, Mr. Cartee, Mr. Cardosa, Mr. Rahme and Mr. Kojouharov signed confidentiality policies covering trade secret information.  The signed NightHawk Confidentiality Policies are attached hereto as Exhibit H.  The confidentiality policy states that:

I understand that during the course of performing my job duties, I may be brought into contact with confidential information which is information created, received and/or maintained by NightHawk, including, but not limited to . . . trade secrets, and other information about Nighthawk's operations and business of a confidential nature . . . .  By signing below I agree that, during the duration of my employment at will, I will not, in any manner, directly or indirectly disclose or divulge to any person or other entity whatsoever, whether directly or indirectly in competition with Nighthawk, or use for any purpose any of such Confidential Information, except as required by law or expressly authorized in writing by Nighthawk. . . . I will not retain any Confidential Information in any form (e.g., computer hard drive, microfilm) upon termination of my employment at will.

40.     Further, when Mr. Rahme, Mr. Kojouharov and Mr. Cartee left NightHawk, they signed Separation and Release Agreements which confirmed their obligation to keep NightHawk's confidential information confidential.  These agreements are attached as Exhibit I.  The agreement states:

You agree . . . to keep all confidential and proprietary information about the past or present business affairs of the Company and its affiliates confidential unless a prior written release from the Company is obtained. You further agree that as of the date hereof, you have returned to the Employer any and all property, tangible or intangible, relating to its business, which you possessed or had control over at any time (including, but not limited to, . . . manuals, files, documents, records, software, customer data base and other data) and that you have not and shall not retain any copies, compilations, extracts, excerpts, summaries or other notes of any such manuals, files, documents, software, customer data base or other data.

41.     Similarly, as a condition of their employment, Mr. Cardosa and Mr. Cartee signed Non-Compete Agreements which re-iterated their obligation to keep Confidential

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

Information, defined as "trade secrets . . . the Company's technology, customers, customer lists, products and services, and pricing," confidential. The signed Non-Compete Agreements are attached as Exhibit J. Specifically the agreements state:

> Nondisclosure and Nonuse of Confidential Information. Employee shall not disclose or use (except in connection with Employees' duties to the Company) at any time, either during the period of Employees' employment relationship with the Company or thereafter, any Confidential Information of which Employee is or becomes aware, whether or not such information is developed by Employee. Employee shall take all appropriate steps to safeguard Confidential Information and to protect it against disclosure, misuse, loss and theft.

**vRad's Acquisition of NightHawk**

42.     In September of 2010 vRad announced an agreement to acquire NightHawk. The acquisition was completed in December of 2010.

43.     In December 2010, vRad decided that it would not use NightHawk's AR2 platform to continue the teleradiology business of the combined companies, but would instead migrate the NightHawk radiologists and facilities to the vRad teleradiology platform.

44.     For former NightHawk radiologists and facilities, the transition from NightHawk's AR2 platform to vRad's platform occurred over a period of several months and was completed in May of 2011.

45.     As part of the acquisition, both Mr. Rahme and Mr. Kojouharov were offered the opportunity to stay on with vRad. Both declined. However, they did agree to stay on with vRad during the transition period to assist with any issues that might arise during that transition. They were originally retained to stay on until September of 2011, but they asked to leave early in June of 2011. vRad granted the request.

46.     During the transition period, vRad took all reasonable and necessary precautions to cause NightHawk to continue to guard the secrecy and safety of the NightHawk Trade Secrets.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

**The Defendants**

47.     Tandem was organized by three former NightHawk employees, Mr. Huber, Mr. Cardosa and Mr. Cartee in February of 2011.  Tandem also employs Mr. Rahme and Mr. Kojouharov (collectively, Mr. Huber, Mr. Cardosa, Mr. Cartee, Mr. Rahme, Mr. Kojouharov and Tandem are referred to as the "Tandem Defendants").

48.     IA is a provider of radiology services, including teleradiology services using Tandem's teleradiology platform.  IA uses DR to perform at least a portion of its teleradiology services.  Like Tandem, IA employs former NightHawk personnel.  For example, IA's Chief Technical Officer, Brian Hall, previously served as the head of operations for NightHawk.

49.     DR is a provider of teleradiology services and utilizes the Tandem teleradiology platform to provide the services.  DR was founded by, and is primarily comprised of, former NightHawk radiologists who previously utilized NightHawk's AR2 platform during the course of their NightHawk engagement.

50.     As described more fully below, Tandem offers a teleradiology platform that allows Tandem's customers, including IA and DR, to compete directly with vRad.  Specifically, IA and DR compete with vRad to provide radiology reads to the same hospitals and other medical providers in need of teleradiology services.

**Tandem's Misappropriation of NightHawk's Trade Secrets and Infringement of NightHawk's Copyrights**

51.     In October 2011, Mr. Rahme and Mr. Kojouharov, and others working in cooperation with them publicly launched Tandem.  Tandem's teleradiology platform allows teleradiology practices, including its clients IA and DR, to compete directly with vRad.

52.     Tandem was organized as an Arizona LLC in February of 2011 by Mr. Huber, Mr. Cardosa and Mr. Cartee.  At the time of organization, Mr. Rahme and Mr.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

Kojouharov were still employed at NightHawk and still had access to the AR2 Trade Secrets.

53.     Mr. Huber, Mr. Cardoza and Mr. Cartee are former employees of NightHawk who had similar contractual obligations as Mr. Rahme and Mr. Kojouharov.

54.     On information and belief, sometime between February 2011 and June 2011, Mr. Huber, Mr. Cardoza and Mr. Cartee recruited Mr. Rahme and Mr. Kojouharov to join Tandem.

55.     Mr. Rahme and Mr. Kojouharov asked to be released from their employment from NightHawk in June 2011, three months before their scheduled separation date. Unaware of Tandem's existence or plans to enable competing practices through the use of NightHawk and vRad intellectual property, vRad and NightHawk agreed to the request.

56.     On information and belief, Tandem released its competing platform four months later in October 2011.

57.     Tandem's teleradiology platform is remarkably similar to NightHawk's copyrighted and proprietary AR2 platform which Mr. Rahme and Mr. Kojouharov worked on for years while employed by NightHawk.

58.     On information and belief, Tandem, Mr. Rahme, Mr. Kojouharov, and others working in cooperation with Tandem, misappropriated and copied valuable and highly confidential AR2 Trade Secrets, and unlawfully used such trade secrets to develop Tandem's teleradiology platform, in breach of the various agreements and policies discussed above.

59.     Although AR2 was developed over a period of years, through significant effort and investment, and consisted of over five million lines of code, Tandem began offering its own teleradiology platform within  a mere four months following Mr. Rahme and Mr. Kojouharov's departure from NightHawk.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

60.     On information and belief, Mr. Rahme and Mr. Kojouharov, as well as other former NightHawk employees, were responsible for engineering the launch Tandem's teleradiology platform.  On information and belief, Tandem's efforts included recruiting another former NightHawk software developer, who understood his task to be assisting in "re-writing" NightHawk's proprietary AR2 code for Tandem's use.

61.     On or about May 2013, vRad had the opportunity to see Tandem's platform in operation and observed substantial similarities to NightHawk's proprietary technology.

62.     On information and belief, Tandem's teleradiology platform is substantially similar, if not identical to AR2, the software that Mr. Rahme and Mr. Kojouharov were integral in developing and which is the subject of NightHawk's copyright and trade secrets.  Further, on its website Tandem markets features and functions of its platform, including "automated intelligent study allocation," "customized rules-based study assignment," and "increased subspecialty utilization and improved turnaround times," which are all features of AR2.

63.     On information and belief, it would have been nearly impossible for Tandem to develop a teleradiology platform in four months without the confidential knowledge and information acquired by Mr. Rahme and Mr. Kojouharov and other former NightHawk employees during their employment with NightHawk.  Given the parallels between the two platforms and the complexity of the technology, the Tandem system could only have been developed as a result of Mr. Rahme and Mr. Kojouharov's access to the AR2 Trade Secrets and copyrighted software.

64.     On information and belief, Tandem's platform is a derivative work of AR2 that infringes the AR2 copyright.

65.     On information and belief, Tandem's misappropriation and misuse of the NightHawk Trade Secrets and infringement of NightHawk's copyright has caused vRad millions of dollars in lost sales and lost profits through the loss of customers to competing teleradiology practices using the Tandem platform and through price erosion caused by

such practices, as well as other damages, the exact amount to be determined at trial. In addition, Tandem's misappropriation and misuse of NightHawk's Trade Secrets and infringement of NightHawk's copyright has damaged vRad by allowing new, competing practices to accelerate their speed to market.

66. On information and belief, a part of Tandem's strategy is to allow its customers, IA and DR to undercut vRad's prices. Using Tandem's platform, IA and DR have solicited and continue to solicit vRad customers and have in fact undercut vRad's prices. Tandem has enabled IA and DR to undercut vRad's prices by offering a competing platform which was created using confidential information misappropriated from NightHawk and vRad, avoiding the cost of original research and development and free-riding on the innovations of NightHawk and vRad.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,970,634 (All Defendants)**

67. Plaintiffs restate and reallege the allegations set forth in paragraphs 1-66.

68. On information and belief, Defendants have infringed and continued to infringe the '634 patent by making, using, selling and offering to sell and/or importing Tandem's teleradiology platform and/or services, within this District and elsewhere in the United States.

69. Since at least the date of service of this Complaint, Defendants have had actual knowledge of the '634 patent.

70. On information and belief, since at least after being served with this Complaint, Defendants have knowingly contributed to the infringement, and continue to contribute to the infringement of one or more claims of the '634 patent by selling Tandem's teleradiology platform or offering services using Tandem's teleradiology platform, which constitutes a material part of the invention and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

71. On information and belief, since at least after being served with this Complaint, with knowledge of the '634 patent, and without authority, Defendants have

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

actively, and continue to actively, induce infringement by end-users of at least one claim of the '634 patent, under 35 U.S.C. § 271(b), by intentionally inducing the use, importation, offer for sale and/or sale of Tandem's teleradiology platform, intending to encourage, and in fact encouraging end-users to directly infringe the '634 patent. On information and belief, Defendants actively induced infringement by, *inter alia,* designing and introducing into the stream of commerce Tandem's infringing Teleradiology platform, and by publishing manuals and promotional literature describing and instructing in the operation of the Tandem teleradiology platform in an infringing manner and by offering support and technical assistance to its customers that encourages use of the Tandem teleradiology platform in ways that infringe the asserted claims. In addition, Defendants had actual knowledge of end-users' direct infringement and that Defendants' acts induced such infringement since at least the date of the filing of the original Complaint in this action.

72. On information and belief, Defendants' infringement of the '634 patent has been willful.

73. On information and belief, Defendants will continue to infringe and willfully infringe the '634 patent unless they are enjoined from doing so by this Court.

74. On information and belief, Defendants' infringement of the '634 patent is irreparably injuring and damaging Plaintiffs, and such injury and damage will continue unless Defendants are permanently enjoined by this Court from further infringement and willful infringement of the '634 patent.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,090,593 (All Defendants)**

75. Plaintiffs restate and reallege the allegations set forth in paragraphs 1-74.

76. On information and belief, Defendants have infringed and continued to infringe the '593 patent by making, using, selling and offering to sell and/or importing Tandem's teleradiology platform and services, within this District and elsewhere in the United States.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1    77.    Since at least the date of service of this Complaint, Defendants have had

2    actual knowledge of the '593 patent.

3    78.    On information and belief, since at least after being served with this

4    Complaint, Defendants have knowingly contributed to the infringement, and continue to

5    contribute to the infringement of one or more claims of the '593 patent by selling

6    Tandem's teleradiology platform or offering services using Tandem's teleradiology

7    platform, which constitutes a material part of the invention and are not staple articles or

8    commodities of commerce suitable for substantial non-infringing use.

9    79.    On information and belief, since at least after being served with this

10   Complaint, with knowledge of the '593 patent, and without authority, Defendants have

11   actively, and continue to actively, induce infringement by end-users of at least one claim

12   of the '593 patent, under 35 U.S.C. § 271(b), by intentionally inducing the use,

13   importation, offer for sale and/or sale of Tandem's teleradiology platform, intending to

14   encourage, and in fact encouraging end-users to directly infringe the '593 patent.  On

15   information and belief, Defendants actively induced infringement by, *inter alia,* designing

16   and introducing into the stream of commerce Tandem's infringing teleradiology platform,

17   and by publishing manuals and promotional literature describing and instructing in the

18   operation of the Tandem teleradiology platform in an infringing manner and by offering

19   support and technical assistance to its customers that encourage use of the Tandem

20   teleradiology platform in ways that infringe the asserted claims.  In addition, Defendants

21   had actual knowledge of end-users' direct infringement and that Defendants' acts induced

22   such infringement since at least the date of the filing of the original Complaint in this

23   action.

24   80.    On information and belief, Defendants' infringement of the '593 patent has

25   been willful.

26   81.    On information and belief, Defendants will continue to infringe and

27   willfully infringe the '593 patent unless they are enjoined from doing so by this Court.

28

{00101438.1 }                                         - 16 -

82.     On information and belief, Defendants' infringement of the '593 patent is irreparably injuring and damaging Plaintiffs, and such injury and damage will continue unless Defendants are permanently enjoined by this Court from further infringement and willful infringement of the '593 patent.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 8,145,503 (All Defendants)**

83.     Plaintiffs restate and reallege the allegations set forth in paragraphs 1-82.

84.     On information and belief, Defendants have infringed and continued to infringe the '503 patent by making, using, selling and offering to sell and/or importing Tandem's teleradiology platform and services, within this District and elsewhere in the United States.

85.     Since at least the date of service of this Complaint, Defendants have had actual knowledge of the '503 patent.

86.     On information and belief, since at least after being served with this Complaint, Defendants have knowingly contributed to the infringement, and continue to contribute to the infringement of one or more claims of the '503 patent by selling Tandem's teleradiology platform or offering services using Tandem's teleradiology platform, which constitutes a material part of the invention and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

87.     On information and belief, since at least after being served with this Complaint, with knowledge of the '503 patent, and without authority, Defendants have actively, and continue to actively induce infringement by end-users of at least one claim of the '503 patent, under 35 U.S.C. § 271(b), by intentionally inducing the use, importation, offer for sale and/or sale of Tandem's teleradiology platform, intending to encourage, and in fact encouraging end-users to directly infringe the '503 patent. On information and belief, Defendants actively induced infringement by, *inter alia,* designing and introducing into the stream of commerce Tandem's infringing Teleradiology platform, and by publishing manuals and promotional literature describing and instructing

in the operation of the Tandem teleradiology platform in an infringing manner and by offering support and technical assistance to its customers that encourage use of the Tandem teleradiology platform in ways that infringe the asserted claims. In addition, Defendants had actual knowledge of end-users' direct infringement and that Defendants' acts induced such infringement since at least the date of the filing of the original Complaint in this action.

88.     On information and belief, Defendants' infringement of the '503 patent has been willful.

89.     On information and belief, Defendants will continue to infringe and willfully infringe the '503 patent unless they are enjoined from doing so by this Court.

90.     On information and belief, Defendants' infringement of the '593 patent is irreparably injuring and damaging Plaintiffs, and such injury and damage will continue unless Defendants are permanently enjoined by this Court from further infringement and willful infringement of the '503 patent.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 8,195,481 (All Defendants)**

91.     Plaintiffs restate and reallege the allegations set forth in paragraphs 1-90.

92.     On information and belief, Defendants have infringed and continued to infringe the '481 patent by making, using, selling and offering to sell and/or importing Tandem's teleradiology platform and/or services, within this District and elsewhere in the United States.

93.     Since at least the date of service of this Complaint, Defendants have had actual knowledge of the '481 patent.

94.     On information and belief, since at least after being served with this Complaint, Defendants have knowingly contributed to the infringement, and continue to contribute to the infringement of one or more claims of the '481 patent by selling Tandem's teleradiology platform or offering services using Tandem's teleradiology

platform, which constitutes a material part of the invention and is not staple articles or commodities of commerce suitable for substantial non-infringing use.

95.     On information and belief, since at least after being served with this Complaint, with knowledge of the '481 patent, and without authority, Defendants have actively, and continue to actively induce infringement by end-users of at least one claim of the '481 patent, under 35 U.S.C. § 271(b), by intentionally inducing the use, importation, offer for sale and/or sale of Tandem's teleradiology platform, intending to encourage, and in fact encouraging end-users to directly infringe the '481 patent.  On information and belief, Defendants actively induced infringement by, *inter alia,* designing and introducing into the stream of commerce Tandem's infringing Teleradiology platform, and by publishing manuals and promotional literature describing and instructing in the operation of the Tandem platform in an infringing manner and by offering support and technical assistance to its customers that encourage use of the Tandem teleradiology platform in ways that infringe the asserted claims.  In addition, Defendants had actual knowledge of end-users' direct infringement and that Defendants' acts induced such infringement since at least the date of the filing of the original Complaint in this action

96.     On information and belief, Defendants' infringement of the '481 patent has been willful.

97.     On information and belief, Defendants will continue to infringe and willfully infringe the '481 patent unless they are enjoined from doing so by this Court.

98.     On information and belief, Defendants' infringement of the '481 patent is irreparably injuring and damaging Plaintiffs, and such injury and damage will continue unless Defendants are permanently enjoined by this Court from further infringement and willful infringement of the '481 patent.

**COUNT V – TRADE SECRET MISAPPROPRIATION (VIOLATION OF A.R.S. § 44-401, *ET SEQ.*) (Tandem Defendants)**

99.     Plaintiffs restate and reallege the allegations set forth in paragraphs 1-98.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

100.    Plaintiffs own trade secrets and confidential information specific to AR2 including, without limitation, the structure of the AR2 source code, and certain algorithms and routines in the source code (the "AR2 Trade Secrets").  Plaintiffs also own other trade secrets and confidential including, without limitation business information, customer identities, business volumes, pricing, turn-around times, and relationships with particular radiologists (the "NightHawk Business Trade Secrets") (collectively the AR2 Trade Secrets and the NightHawk Business Trade Secrets are referred to as the "NightHawk Trade Secrets").

101.    The NightHawk Trade Secrets were developed through extensive time, skilled labor, and expense over a period of years.

102.    The NightHawk Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.  For example, the AR2 Trade Secrets derive independent economic valuable from not being generally known to, or ascertainable by proper means by other persons, by allowing vRad to offer its customers teleradiology services using a proprietary teleradiology platform that cannot be copied by its competitors.  Similarly the NightHawk Business Trade Secrets derive independent economic value in maintaining the secrecy of NightHawk's business information, customer identities, business volumes, pricing, turn-around times, and relationships with particular radiologists.

103.    As described above, Plaintiffs have taken great care to protect the ownership and confidentiality of the highly valuable NightHawk Trade Secrets.  Plaintiffs have not permitted or allowed the NightHawk Trade Secrets to be accessed or used by anyone without a duty and obligation to maintain their secrecy.

104.    The NightHawk Trade Secrets could not have been ascertained from Plaintiffs' publicly available products or information prior to their use by Tandem.

105.    Mr. Huber, Mr. Cardosa, Mr. Cartee, Mr. Rahme, Mr. Kojouharov acquired such information through their employment with NightHawk.  As employees of NightHawk, Mr. Huber, Mr. Cardosa, Mr. Cartee, Mr. Rahme and Mr. Kojouharov had full access to and participated in the development of the NightHawk Trade Secrets.  At the time Mr. Huber, Mr. Cardosa, Mr. Cartee, Mr. Rahme and Mr. Kojouharov acquired the information, they knew that the information was a trade secret and confidential and signed confidentiality and intellectual property agreements promising not to disclose NightHawk's Trade Secrets, or other confidential information, to any unauthorized party. Mr. Huber, Mr. Cardosa, Mr. Cartee, Mr. Rahme and Mr. Kojouharov had a duty not to disclose or use the NightHawk Trade Secrets to any unauthorized party even after their employment with NightHawk terminated.

106.    On information and belief, Mr. Rahme and Mr. Kojouharov, and others working in cooperation with Tandem, and Tandem have disclosed and misused the AR2 Trade Secrets to research, develop, offer for sale and sell Tandem's teleradiology platform and services.

107.    On information and belief, Mr. Rahme and Mr. Kojouharov, and others working in cooperation with Tandem, and Tandem intentionally and unlawfully misappropriated the AR2 Trade Secrets and disclosed and used them for their own benefit and the benefit of Tandem, including using the AR2 Trade Secrets to develop Tandem's teleradiology platform that allows its customers, IA and DR, to compete directly with vRad.

108.    On information and belief, the Tandem Defendants intentionally and unlawfully misappropriated the NightHawk Business Trade Secrets and disclosed and used them for their own benefit and the benefit of Tandem, including using business information, customer identities, business volumes, pricing, turn-around times, and relationships with particular radiologists to compete directly with vRad, both in terms of taking customers and under-pricing vRad.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

109.    On information and belief, Tandem knew or should have known that it could not disclose or use any NightHawk Trade Secrets that it received from Mr. Rahme and Mr. Kojouharov, Mr. Huber, Mr. Cartee, Mr. Cardosa or anyone else working in cooperation with Tandem.  Tandem was formed by and made up of former NightHawk employees who were under strict contractual obligations to maintain the confidentiality of the NightHawk Trade Secrets.  Accordingly, the Tandem Defendants knew or should have known that Mr. Rahme and Mr. Kojouharov, Mr. Huber, Mr. Cartee, Mr. Cardosa or anyone else working in cooperation with Tandem acquired the NightHawk Trade Secrets under circumstances giving rise to a duty to maintain their secrecy

110.    By engaging in the conduct described herein, the Tandem Defendants have misappropriated the NightHawk Trade Secrets in violation of A.R.S. § 44-401, *et seq.*

111.    The Tandem Defendants' misuse and misappropriation of the NightHawk Trade Secrets has caused and will continue to cause Plaintiffs to suffer substantial damages, including but not limited to losses suffered as a result of the disclosure of its confidential and proprietary trade secrets, as well as the loss of current and future business that could have been derived from the use of their confidential and proprietary trade secrets.  The amount of damages that Plaintiffs have suffered will be proven at trial.

112.    As a result of the Tandem Defendants' misappropriation of the NightHawk Trade Secrets, the Tandem Defendants have been unjustly enriched in an amount to be proven at trial.

113.    On information and belief, the Tandem Defendants' actions described herein were willfully and intentionally undertaken with malice, oppression and/or fraud.

114.    On information and belief, as a direct and proximate result of the Tandem Defendants' willful and malicious misappropriation of the AR2 Trade Secrets, Plaintiffs needed legal counsel to investigate and assert the cause of action, and are entitled to recover their attorneys' fees from the Tandem Defendants pursuant to A.R.S. § 44-404, as well as costs that may be appropriately recoverable.

115.     On information and belief, the Tandem Defendants acted willfully and maliciously in misusing and misappropriating the AR2 Trade Secrets, entitling Plaintiffs recover damages for the period that could have been prohibited, doubled pursuant to A.R.S. § 44-403 as exemplary damages, in an amount to be determined at trial.

116.     On information and belief, Plaintiffs have been and will be damaged as a direct and proximate result of the Tandem Defendants' continuing acts of misappropriation and the threatened misappropriation and disclosure of the NightHawk Trade Secrets, including, but not limited to, the loss of current and prospective business relationships, customers and profits, interference with the conduct of Plaintiff's business, injury to its reputation and goodwill, the loss of its ability and right to use and exploit the NightHawk Trade Secrets, and damages including the lost profits and cost savings to the Tandem Defendants accomplished through the misappropriation, the loss of the value of the NightHawk Trade Secrets, the loss of the profits that would have been received but for the Tandem Defendants' conduct.  The damages that Plaintiffs have suffered and continue to suffer from such conduct are irreparable.  Plaintiffs have no adequate remedy at law, and such conduct will continue to cause such irreparable harm unless restrained by the Court.

117.     On information and belief, unless enjoined by this Court, the Tandem Defendants' conduct and continued use of the misappropriated NightHawk Trade Secrets will cause further irreparable injury.  Plaintiffs therefore request that this Court issue a permanent injunction, restraining and enjoining the Tandem Defendants and their officers, directors, agents, servants, employees, representatives, and anyone acting at their direction or on their behalf from misappropriating, using or disclosing any NightHawk Trade Secrets.

### COUNT VI - COPYRIGHT INFRINGEMENT (All Defendants)

118.     Plaintiffs restate and reallege the allegations set forth in paragraphs 1-117.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

119.    NightHawk owns the copyright for the AR2 software (Registration No. TXu001860792).  Plaintiffs have complied in all respects with 17 U.S.C. §§ 101, *et seq.*, and have secured the exclusive rights and privileges in and to the copyrighted AR2 software.  Plaintiffs have been and still are the sole proprietor of all rights, title, and interest in and to the AR2 copyrighted software.

120.    On information and belief, Mr. Rahme, Mr. Kojouharov and other former NightHawk employees working with Tandem in creating its teleradiology platform had access to the AR2 copyrighted software while employed at NightHawk and did in fact access the AR2 software.

121.    On information and belief, without permission or consent of Plaintiffs, one or more Defendants have infringed Plaintiffs' exclusive rights in the copyrighted AR2 software by reproducing, preparing derivative works, distributing, copying, lending, leasing, renting, or a combination thereof, Tandem's teleradiology platform, which is substantially similar to the copyrighted AR2 software.

122.    On information and belief, without permission or consent of Plaintiffs, one or more Defendants have knowingly contributed to, and will continue to knowingly contribute to, the infringement of the copyrighted AR2 software by enabling, inducing, facilitating and contributing to each act of direct infringement by Mr. Rahme, Mr. Kojouharo, other former NightHawk employees working with Tandem, and Tandem in creating its teleradiology platform that infringes Plaintiffs' exclusive rights in the copyrighted AR2 software.

123.    On information and belief, without permission or consent of Plaintiffs, one or more Defendants have knowingly induced, and will continue to knowingly induce, the infringement of the copyrighted AR2 software by taking active steps with specific intent to encourage and facilitate direct infringement by Mr. Rahme, Mr. Kojouharov, other former NightHawk employees working with Tandem, and Tandem in creating its

teleradiology platform that infringes Plaintiffs' exclusive rights in the copyrighted AR2 software.

124.    On information and belief, one or more Defendants are vicariously liable for the infringing acts of Mr. Rahme, Mr. Kojouharov and other former NightHawk employees working with Tandem resulting from the creation of Tandem's teleradiology platform that infringes Plaintiffs' exclusive rights in the copyrighted AR2 software.  On information and belief, one or more Defendants had at all relevant times the right and ability to control the infringing acts of Mr. Rahme, Mr. Kojouhaov and the other former NightHawk employees.

125.    On information and belief, Plaintiffs allege that, as a direct and proximate result of Defendants' wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiffs.  Accordingly, Plaintiffs seek an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

126.    Defendants' infringing conduct has also caused and is causing substantial and irreparable injury and damage to Plaintiffs in an amount not capable of determination, and, unless restrained, will cause further irreparable injury, leaving Plaintiffs with no adequate remedy at law.  Accordingly, Plaintiffs seek to enjoin Defendants' infringement pursuant to 17 U.S.C. § 502.

127.    On information and belief, Defendants have willfully engaged in, and are willfully engaging in, the acts complied of with oppression, fraud, and malice, and in conscious disregard of the rights of Plaintiffs.  Plaintiffs are, therefore, entitled to the maximum statutory damages allowable.

## COUNT VII - INTENTIONAL INTERFERENCE WITH
## PROSPECTIVE BUSINESS ADVANTAGE
### (All Defendants)

128.    Plaintiffs restate and reallege the allegations set forth in paragraphs 1-127.

{00101438.1 }

129.    Through their legitimate business efforts, Plaintiffs have developed economic relationships with existing and potential customers that contain the probability of future economic benefits to vRad including, but not limited to, the sale of teleradiology services provided by radiologists using the Plaintiffs' proprietary teleradiology platform.

130.    On information and belief, Tandem utilized Plaintiffs' valuable confidential and proprietary information without authorization to illegally and improperly design and develop Tandem's teleradiology platform.

131.    On information and belief, IA and DR have intentionally and purposefully offered for sale and sold to Plaintiffs' existing and prospective customers services provided by using Tandem's teleradiology platform that was illegally and improperly designed and developed using Plaintiffs' valuable confidential and proprietary information.

132.    On information and belief, IA and DR knew or should have known of Plaintiffs' past and probable business relationships with its existing and prospective customers when it offered for sale and sold teleradiology services using Tandem's teleradiology platform that was illegally and improperly designed and developed using Plaintiffs' valuable confidential and proprietary information.

133.    Through at least Defendants' above improper acts, Defendants have knowingly and intentionally acted to disrupt Plaintiffs' existing and prospective business relationships.

**COUNT VIII - BREACH OF CONTRACT**

**(Mr. Huber, Mr. Cartee, Mr. Cardosa, Mr. Rhamer, Mr. Kojouhaov)**

134.    Plaintiffs restate and reallege the allegations set forth in paragraphs 1-133.

135.    Mr. Huber, Mr. Cartee, Mr. Cardosa, Mr. Rahme and Mr. Kojouhaov all entered into the valid and enforceable contracts described in greater detail above as a condition of their employment with NightHawk.  Pursuant to those contracts, Mr. Huber, Mr. Cartee, Mr. Cardosa, Mr. Rahme and Mr. Kojouhaov agreed (a) that during the

duration of their employment they would not, in any manner, directly or indirectly in competition with Nighthawk, or use for any purpose any of such confidential information, including trade secrets, except as required by law or expressly authorized in writing by NightHawk, and (b) that upon termination of their employment, they would immediately return to NightHawk any and all confidential information in their possession or control and would not retain any confidential information in any form upon the termination of their employment at will, and (c) that they would notify NightHawk should they suspect misuse of NightHawk confidential information and assist NightHawk in any proceedings taken by NightHawk for alleged misuse of confidential information.

136.    The contracts were supported by consideration in the form of employment with and compensation by NightHawk.

137.    NightHawk has performed all of the material obligations required on its part.

138.    On information and belief, Mr. Huber, Mr. Cartee, Mr. Cardosa, Mr. Rahme and Mr. Kojouhaov breached the terms of the contracts by engaging in the acts set forth in detail above, including but not limited to, misappropriating or causing to be misappropriated NightHawk's AR2 Trade Secrets.

139.    As a result of Mr. Huber, Mr. Cartee, Mr. Cardosa, Mr. Rahme and Mr. Kojouhaov's breach of the Confidentiality Policy, Plaintiffs have suffered damages in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

(a)    A judicial determination that Defendants have infringed the '634, '593, '503 and the '481 patents;

(b)     An order permanently enjoining Defendants, their agents, officers, directors, assigns and others acting in concert with any of them from infringing, inducing the infringement and/or contributing to the infringement of the '634, '593, '503 and the '481 patents;

(c)     An award of damages to compensate Plaintiffs for Defendants' infringement of the '634, '593, '503 and the '481 patents;

(d)     An award of prejudgment interest and post-judgment interest on the damages awarded for Defendants' infringement of the '634, '593, '503 and the '481 patents;

(e)     A judicial determination that Defendants have willfully infringed the '634, '593, '503 and the '481 patents and that treble damages should be awarded pursuant to 35 U.S.C. § 284;

(f)     That this be deemed an exceptional case and Plaintiffs be awarded their attorneys' fees and costs pursuant to 35 U.S.C. § 285;

(g)     Awarding Plaintiffs' damages for the period that could have been prohibited, pursuant to A.R.S. § 44-403(A);

(h)     Awarding Plaintiffs exemplary damages pursuant to A.R.S § 44-430(B);

(i)     Awarding Plaintiffs attorneys' fees and costs pursuant to A.R.S. §§ 44-404 and 12-341.01;

(j)     An order permanently enjoining Defendants, their agents, officers, directors, assigns and others acting in concert with any of them from further wrong-doing, and requiring Defendants, their employees and all others involved in the misappropriation of Plaintiffs trade secrets to return all of Plaintiffs' trade secrets and other confidential and proprietary materials to Plaintiffs pursuant to A.R.S. § 44-402;

(k)     A judicial determination that Defendants are liable for all of the willful conduct complained of herein, including trade secret misappropriation, copyright infringement intentional interference with prospective business advantage, and breach of

the Confidentiality Policy and the Confidentiality, Intellectual Property, and Software Agreement;

(l)     An order permanently enjoining Defendants, their agents, officers, directors, assigns and others acting in concert with any of them from further and continuing infringement of Copyright Registration TXu00186079;

(m)     Awarding Plaintiffs all of Defendants' profits and further awarding to Plaintiff its damages as a result of Defendants' copyright infringement;

(n)     Awarding Plaintiffs attorneys' fees and costs pursuant to 17 U.S.C. § 505;

(o)     Awarding Plaintiffs damages for breach of contract and intentional interference with business advantage; and

(p)     Awarding Plaintiffs such other and further relief as to this Court may seem just and proper.

Dated:  August 19, 2013                    Respectfully submitted,


By: /s/ Keith Beauchamp
Keith Beauchamp
Coppersmith, Schermer & Brockelman PLC
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004


Jake M. Holdreith
(*pro hac vice* application to be filed)
Jamie R. Kurtz
(*pro hac vice* application to be filed)
Robins, Kaplan, Miler & Ciresi L.L.P.
800 LaSalle Plaza, Suite 2800
Minneapolis, MN 55402

*Attorneys for Plaintiffs*