# EXHIBIT I



p 952.595.1100
f 952.942.3361
www.vrad.com

11995 Singletree Lane, Suite 500
Eden Prairie, MN 55344

May 9, 2011

Kamil Rahme
7575 E. Indian Bend Road
Scottsdale, AZ 85260

Dear Kamil:

This Separation and Release Agreement (the "**Separation and Release Agreement**") confirms your agreement with NightHawk Radiology Holdings, Inc. (the "**Company**") relating to your separation from employment with the Company.

1. Your employment with the Company shall end effective no later than the close of business on June 30, 2011 (the "**Termination Date**"). In addition to any salary payments owing for the final payroll period through the Termination Date and whatever vested rights you may have under any other benefit, policy or program provided by the Company, pursuant to the terms and conditions of the NightHawk Radiology Holdings, Inc. Severance Plan, you shall receive a cash lump sum payment equal to three months of your annual base salary as in effect on your last day of employment with the Company (the "**Severance Payment**"), less any payroll deductions required by law, which shall be in lieu of any other payments or benefits (including vacation or other paid leave time) to which you otherwise might be entitled. The Severance Payment shall be paid to you on the Company's next regularly scheduled payroll date following the date on which this Separation and Release Agreement has become effective, but in no event later than the sixtieth (60th) day following the Termination Date.



VIRTUAL RADIOLOGIC

p 952.595.1100
f 952.942.3361
www.vrad.com

11995 Singletree Lane, Suite 500
Eden Prairie, MN 55344

2. In consideration of the terms hereof, you have agreed to and do waive any claims you may have for employment by the Company and have agreed not to seek such employment or reemployment by the Company in the future. You have further agreed to and do release and forever discharge the Company, its parents, affiliates, subsidiaries, predecessors, successors and assigns and their respective past and present officers, directors, shareholders, employees and agents from any and all claims and causes of action, known or unknown, arising out of or relating to your employment by the Company or the termination thereof, including, but not limited to wrongful discharge, breach of contract, tort, fraud, defamation, the Civil Rights Acts, Americans with Disabilities Act, Employee Retirement Income Security Act, Family Medical Leave Act, the Arizona Civil Rights Act and the Arizona Employment Protection Act, or any other federal, state or local law relating to employment, discrimination in employment, termination of employment, wages, benefits or otherwise. This release does not include your right to enforce the terms of this Separation and Release Agreement or any vested rights you may have under any other benefit, policy or program provided by the Company.

3. Neither by offering to make nor by making this Separation and Release Agreement does either party admit any failure of performance, wrongdoing, or violation of law.


VIRTUAL RADIOLOGIC

p 952.595.1100
f 952.942.3361
www.vrad.com

11995 Singletree Lane, Suite 500
Eden Prairie, MN 55344

4. You and the Company agree that in the event the Company receives any inquiries from prospective employers, it shall be the policy of the Company to respond by advising that the Company's policy is to provide information only as to service dates and positions held and by providing such information.

5. You represent and warrant that you have not directly or indirectly, disclosed, published or otherwise disseminated in any way, and agree that you shall not hereafter, directly or indirectly, disclose, publish or otherwise disseminate in any way information pertaining to the terms of this Separation and Release Agreement, except to your own legal counsel, accountant(s), tax preparer(s), or immediate family members living in the same home, or as otherwise may be required by law.

6. You agree not to disparage the Company, its past and present investors, officers, directors or employees or its affiliates and to keep all confidential and proprietary information about the past or present business affairs of the Company and its affiliates confidential unless a prior written release from the Company is obtained. You further agree that as of the date hereof, you have returned to the Employer any and all property, tangible or intangible, relating to its business, which you possessed or had control over at any time (including, but not limited to, Company-provided credit cards, building or office access cards, keys, computer equipment, manuals, files, documents, records, software, customer data base and other data) and that you have not and shall not



retain any copies, compilations, extracts, excerpts, summaries or other notes of any such manuals, files, documents, records, software, customer data base or other data.

7. This Separation and Release Agreement sets forth the entire understanding of the parties and supersedes any and all prior agreements, oral or written, relating to your employment by the Company or the termination thereof. This Separation and Release Agreement may not be modified except by a writing, signed by you and by a duly authorized officer of the Company. This Separation and Release Agreement shall be binding upon your heirs and personal representatives, and the successors and assigns of the Company.

8. You acknowledge that before entering into this Separation and Release Agreement, you have had the opportunity to consult with any attorney or other advisor of your choice, and you have been advised to do so if you choose. You further acknowledge that you have entered into this Separation and Release Agreement of your own free will, and that no promises or representations have been made to you by any person to induce you to enter into this Separation and Release Agreement other than the express terms set forth herein. You further acknowledge that you have read this Separation and Release Agreement and understand all of its terms, including the covenant against disclosure set forth in paragraph 5 above and the waiver and release of claims set forth in paragraph 0 above.



**VIRTUAL RADIOLOGIC**

p 952.595.1100
f 952.942.3361
www.vrad.com

11995 Singletree Lane, Suite 500
Eden Prairie, MN 55344

If the foregoing is acceptable to you, please sign the annexed copy of this Separation and Release Agreement and return it to Tricia Sickmann at Virtual Radiologic. You may take up to ten (10) days from today to consider, sign and return this Separation and Release Agreement.

Accepted and Agreed:

_____
Kamil Rahme

May 9th, 2011
_____
Date Signed



p 952.595.1100
f 952.942.3361
www.vrad.com

11995 Singletree Lane, Suite 500
Eden Prairie, MN 55344

VIRTUAL RADIOLOGIC

June 20, 2011

Jordan Kojouharov
9048 E. Altadena Avenue
Scottsdale, AZ 85260

Dear Jordan:

This Separation and Release Agreement (the "**Separation and Release Agreement**") confirms your agreement with NightHawk Radiology Holdings, Inc. (the "**Company**") relating to your separation from employment with the Company.

1. Your employment with the Company shall end effective no later than the close of business on June 30, 2011 (the "**Termination Date**"). In addition to any salary payments owing for the final payroll period through the Termination Date and whatever vested rights you may have under any other benefit, policy or program provided by the Company, pursuant to the terms and conditions of the NightHawk Radiology Holdings, Inc. Severance Plan, you shall receive a cash lump sum payment equal to three months of your annual base salary as in effect on your last day of employment with the Company (the "**Severance Payment**"), less any payroll deductions required by law, which shall be in lieu of any other payments or benefits (including vacation or other paid leave time) to which you otherwise might be entitled. The Severance Payment shall be paid to you on the Company's next regularly scheduled payroll date following the date on which this Separation and Release Agreement has become effective, but in no event later than the sixtieth (60th) day following the Termination Date.



p 952.595.1100
f 952.942.3361
www.vrad.com

11995 Singletree Lane, Suite 500
Eden Prairie, MN 55344

VIRTUAL RADIOLOGIC

2.  In consideration of the terms hereof, you have agreed to and do waive any claims you may have for employment by the Company and have agreed not to seek such employment or reemployment by the Company in the future. You have further agreed to and do release and forever discharge the Company, its parents, affiliates, subsidiaries, predecessors, successors and assigns and their respective past and present officers, directors, shareholders, employees and agents from any and all claims and causes of action, known or unknown, arising out of or relating to your employment by the Company or the termination thereof, including, but not limited to wrongful discharge, breach of contract, tort, fraud, defamation, the Civil Rights Acts, Americans with Disabilities Act, Employee Retirement Income Security Act, Family Medical Leave Act, the Arizona Civil Rights Act and the Arizona Employment Protection Act, or any other federal, state or local law relating to employment, discrimination in employment, termination of employment, wages, benefits or otherwise. This release does not include your right to enforce the terms of this Separation and Release Agreement or any vested rights you may have under any other benefit, policy or program provided by the Company.

3.  Neither by offering to make nor by making this Separation and Release Agreement does either party admit any failure of performance, wrongdoing, or violation of law.



p 952.595.1100
f 952.942.3361
www.vrad.com

11995 Singletree Lane, Suite 500
Eden Prairie, MN 55344

VIRTUAL RADIOLOGIC

4.  You and the Company agree that in the event the Company receives any inquiries from prospective employers, it shall be the policy of the Company to respond by advising that the Company's policy is to provide information only as to service dates and positions held and by providing such information.

5.  You represent and warrant that you have not directly or indirectly, disclosed, published or otherwise disseminated in any way, and agree that you shall not hereafter, directly or indirectly, disclose, publish or otherwise disseminate in any way information pertaining to the terms of this Separation and Release Agreement, except to your own legal counsel, accountant(s), tax preparer(s), or immediate family members living in the same home, or as otherwise may be required by law.

6.  You agree not to disparage the Company, its past and present investors, officers, directors or employees or its affiliates and to keep all confidential and proprietary information about the past or present business affairs of the Company and its affiliates confidential unless a prior written release from the Company is obtained. You further agree that as of the date hereof, you have returned to the Employer any and all property, tangible or intangible, relating to its business, which you possessed or had control over at any time (including, but not limited to, Company-provided credit cards, building or office access cards, keys, computer equipment, manuals, files, documents, records, software, customer data base and other data) and that you have not and shall not



p 952.595.1100
f 952.942.3361
www.vrad.com

11995 Singletree Lane, Suite 500
Eden Prairie, MN 55344

VIRTUAL RADIOLOGIC

retain any copies, compilations, extracts, excerpts, summaries or other notes of any such manuals, files, documents, records, software, customer data base or other data.

7.  This Separation and Release Agreement sets forth the entire understanding of the parties and supersedes any and all prior agreements, **other than the retention agreement,** oral or written, relating to your employment by the Company or the termination thereof. This Separation and Release Agreement may not be modified except by a writing, signed by you and by a duly authorized officer of the Company. This Separation and Release Agreement shall be binding upon your heirs and personal representatives, and the successors and assigns of the Company.

8.  You acknowledge that before entering into this Separation and Release Agreement, you have had the opportunity to consult with any attorney or other advisor of your choice, and you have been advised to do so if you choose. You further acknowledge that you have entered into this Separation and Release Agreement of your own free will, and that no promises or representations have been made to you by any person to induce you to enter into this Separation and Release Agreement other than the express terms set forth herein. You further acknowledge that you have read this Separation and Release Agreement and understand all of its terms, including the covenant against disclosure set forth in paragraph 5 above and the waiver and release of claims set forth in paragraph 2 above.



**VIRTUAL RADIOLOGIC**

p 952.595.1100
f 952.942.3361
www.vrad.com

11995 Singletree Lane, Suite 500
Eden Prairie, MN 55344

If the foregoing is acceptable to you, please sign the annexed copy of this Separation and Release Agreement and return it to Tricia Sickmann at Virtual Radiologic. You may take up to ten (10) days from today to consider, sign and return this Separation and Release Agreement.

Accepted and Agreed:

_____
Jordan Kojouharov

6/16/2011
Date Signed

# NIGHTHAWK RADIOLOGY HOLDINGS, INC.
# SEPARATION & GENERAL RELEASE AGREEMENT
# PAUL E. CARTEE

Pursuant to this Separation & General Release Agreement (the "**General Release**") I, Paul E. Cartee, in consideration of and subject to the performance by NightHawk Radiology Holdings, Inc., a Delaware corporation (the "**Employer**"), of its obligations under the Employment Agreement, dated as of August 12, 2009, as amended from time to time (the "**Agreement**"), do hereby release and forever discharge as of the date hereof Virtual Radiologic Corporation ("**vRad**"), the Employer, and each of their respective affiliates, subsidiaries, predecessors, successors and assigns, and all present and former directors, officers, agents, representatives and employees of vRad, the Employer and each of their respective affiliates and subsidiaries, and each of vRad and the Employer's respective direct or indirect owners (collectively, the "**Released Parties**"), to the extent provided below.

1. I understand that any payments or benefits paid or granted to me under Section 4(a) of the Agreement represent, in part, consideration for signing this General Release and are not salary, wages or benefits to which I was already entitled. Notwithstanding anything to the contrary set forth in the Agreement, payment of the Severance Payment (as defined in the Agreement) shall be made in lump sum on the Employer's regularly scheduled payroll period following the date that this General Release has been executed, delivered to the Employer and has become irrevocable. I understand and agree that I will not receive the payments and benefits specified in Section 4(a) of the Agreement unless I execute this General Release and do not revoke this General Release within the time period permitted hereafter or breach this General Release. Such payments and benefits will not be considered compensation for purposes of any employee benefit plan, program, policy or arrangement maintained or hereafter established by the Employer or its affiliates. I also acknowledge and represent that I have received all payments and benefits that I am entitled to receive (as of the date hereof) by virtue of any employment by the Employer.

2. Except as provided in paragraphs 4 and 12 below and except for the provisions of my Employment Agreement which expressly survive the termination of my employment with the Employer, I knowingly and voluntarily (for myself, my heirs, executors, administrators and assigns) release and forever discharge the Employer and the other Released Parties from any and all claims, suits, controversies, actions, causes of action, cross-claims, counter-claims, demands, debts, compensatory damages, liquidated damages, punitive or exemplary damages, other damages, claims for costs and attorneys' fees, or liabilities of any nature whatsoever in law and in equity, both past and present (through the date this General Release becomes effective and enforceable) and whether known or unknown, suspected, or claimed against the Employer or any of the Released Parties which I, my spouse, or any of my heirs, executors, administrators or assigns, may have, which arise out of or are connected with my employment with, or my separation or termination from, the Employer (including, but not limited to, any allegation, claim or violation, arising

1

under: Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Age Discrimination in Employment Act of 1967, as amended (including, without limitation, the Older Workers Benefit Protection Act); the Equal Pay Act of 1963, as amended; the Americans with Disabilities Act of 1990; the Family and Medical Leave Act of 1993; the Worker Adjustment Retraining and Notification Act; the Employee Retirement Income Security Act of 1974; any applicable Executive Order Programs; the Fair Labor Standards Act; or their state or local counterparts; the Arizona Civil Rights Act and the Arizona Employment Protection Act; or under any other federal, state or local civil or human rights law; or any claim for wrongful discharge, breach of contract, infliction of emotional distress, defamation; or any claim for costs, fees, or other expenses, including (without limitation) attorneys' fees incurred in these matters) (all of the foregoing collectively referred to herein as the "**Claims**").

3. I represent that I have made no assignment or transfer of any right, claim, demand, cause of action, or other matter covered by paragraph 2 above.

4. I agree that this General Release does not waive or release any rights or claims that I may have under the Age Discrimination in Employment Act of 1967 which arise after the date I execute this General Release. I acknowledge and agree that my separation from employment with the Employer in compliance with the terms of the Agreement shall not serve as the basis for any claim or action (including, without limitation, any claim under the Age Discrimination in Employment Act of 1967).

5. In signing this General Release, I acknowledge and intend that it shall be effective as a bar to each and every one of the Claims hereinabove mentioned or implied. I expressly consent that this General Release shall be given full force and effect according to each and all of its express terms and provisions, including, without limitation, those relating to unknown and unsuspected Claims (notwithstanding any state statute that expressly limits the effectiveness of a general release of unknown, unsuspected and unanticipated Claims), if any, as well as those relating to any other Claims hereinabove mentioned or implied. I acknowledge and agree that this waiver is an essential and material term of this General Release and that without such waiver the Employer would not have agreed to the terms of the Agreement. I further agree that in the event I should bring a Claim seeking damages against the Employer, or in the event I should seek to recover against the Employer in any Claim brought by a governmental agency on my behalf, this General Release shall serve as a complete defense to such Claims. I further agree that I am not aware of any pending charge or complaint of the type described in paragraph 2 as of the execution of this General Release.

6. I represent that I am not aware of any claim by me other than the claims that are released by this Agreement.

7. I agree that neither this General Release, nor the furnishing of the consideration for this General Release, shall be deemed or construed at any time to be an admission by the Employer, any Released Party or myself of any improper or unlawful conduct.

8. I agree that this General Release is confidential and agree not to disclose any information regarding the terms of this General Release, except to my immediate family and any tax, legal or other counsel I have consulted regarding the meaning or effect hereof or as required by law, and I will instruct each of the foregoing not to disclose the same to anyone.

9. Any non-disclosure provision in this General Release does not prohibit or restrict me (or my attorney) from responding to any inquiry about this General Release or its underlying facts and circumstances by the Securities and Exchange Commission (SEC), the National Association of Securities Dealers, Inc. (NASD), any other self-regulatory organization or governmental entity.

10. I agree to reasonably cooperate with the Employer in any internal investigation or administrative, regulatory, or judicial proceeding. I understand and agree that my cooperation may include, but not be limited to, making myself available to the Employer upon reasonable notice for interviews and factual investigations; appearing at the Employer's request to give testimony without requiring service of a subpoena or other legal process; volunteering to the Employer pertinent information; and turning over to the Employer all relevant documents which are or may come into my possession all at times and on schedules that are reasonably consistent with my other permitted activities and commitments. I understand that in the event the Employer asks for my cooperation in accordance with this provision, the Employer will reimburse me solely for reasonable travel expenses, including, without limitation, lodging and meals, upon my submission of receipts.

11. I agree not to disparage the Employer, its past and present investors, officers, directors or employees or its affiliates and to keep all confidential and proprietary information about the past or present business affairs of the Employer and its affiliates confidential unless a prior written release from the Employer is obtained. I further agree that as of the date hereof, I have returned to the Employer any and all property, tangible or intangible, relating to its business, which I possessed or had control over at any time (including, but not limited to, Employer-provided credit cards, building or office access cards, keys, computer equipment, manuals, files, documents, records, software, customer data base and other data) and that I have not and shall not retain any copies, compilations, extracts, excerpts, summaries or other notes of any such manuals, files, documents, records, software, customer data base or other data.

12. Notwithstanding anything in this General Release to the contrary, this General Release shall not relinquish, diminish, or in any way affect any rights or claims (i) arising out of any breach by the Employer or by any Released Party of the Agreement after the date hereof and (ii) to indemnification for which I may be entitled to as a former officer or director of the Employer under their respective charter and/or bylaws and/or other constituent documents so long as I am otherwise entitled to be indemnified as authorized thereunder.

13. Whenever possible, each provision of this General Release shall be interpreted in, such manner as to be effective and valid under applicable law, but if any provision of this General Release is held to be invalid, illegal or unenforceable in any respect

under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or any other jurisdiction, but this General Release shall be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained herein.

BY SIGNING THIS GENERAL RELEASE, I REPRESENT AND AGREE THAT:

(i)    I HAVE READ IT CAREFULLY;

(ii)    I UNDERSTAND ALL OF ITS TERMS AND KNOW THAT I AM GIVING UP IMPORTANT RIGHTS, INCLUDING BUT NOT LIMITED TO, RIGHTS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, AS AMENDED, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED; THE EQUAL PAY ACT OF 1963, THE AMERICANS WITH DISABILITIES ACT OF 1990; AND THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED;

(iii)    I VOLUNTARILY CONSENT TO EVERYTHING IN IT;

(iv)    I HAVE BEEN ADVISED TO CONSULT WITH AN ATTORNEY BEFORE EXECUTING IT AND I HAVE DONE SO OR, AFTER CAREFUL READING AND CONSIDERATION I HAVE CHOSEN NOT TO DO SO OF MY OWN VOLITION;

(v)    I HAVE HAD AT LEAST 21 DAYS FROM THE DATE OF MY RECEIPT OF THIS RELEASE SUBSTANTIALLY IN ITS FINAL FORM ON THE ____ DAY OF _____, 2010 TO CONSIDER IT AND THE CHANGES MADE SINCE THE ____ DAY OF _____, 2010 VERSION OF THIS RELEASE ARE NOT MATERIAL AND WILL NOT RESTART THE REQUIRED 21-DAY PERIOD;

(vi)    THE CHANGES TO THE AGREEMENT SINCE THE ____ DAY OF _____, 2010 EITHER ARE NOT MATERIAL OR WERE MADE AT MY REQUEST.

(vii)    I UNDERSTAND THAT I HAVE SEVEN DAYS AFTER THE EXECUTION OF THIS RELEASE TO REVOKE IT AND THAT THIS RELEASE SHALL NOT BECOME EFFECTIVE OR ENFORCEABLE UNTIL THE REVOCATION PERIOD HAS EXPIRED;

(viii)    I HAVE SIGNED THIS GENERAL RELEASE KNOWINGLY AND VOLUNTARILY AND WITH THE ADVICE OF ANY COUNSEL RETAINED TO ADVISE ME WITH RESPECT TO IT; AND

(ix)    I AGREE THAT THE PROVISIONS OF THIS GENERAL RELEASE MAY NOT BE AMENDED, WAIVED, CHANGED OR MODIFIED EXCEPT BY AN INSTRUMENT IN WRITING SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE EMPLOYER AND BY ME.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, this Separation & General Release Agreement is executed as of the 3rd day of January, 2011.

**PAUL E. CARTEE**

Name: /s/ Paul E. Cartee
Date: January 3, 2011

**NIGHTHAWK RADIOLOGY HOLDINGS, INC.**

By:_____
Name:
Date:

**VIRTUAL RADIOLOGIC CORPORATION**

By:_____
Name:
Date:
[SIGNATURE PAGE TO CARTEE SEPARATION & RELEASE]